409 S.E.2d 725 (1991)
104 N.C. App. 200
Donna R. POWERS
v.
Charles N. PARISHER.
No. 9026SC1306.
Court of Appeals of North Carolina.
November 5, 1991.
*726 Hicks, Hodge and Cranford, P.A., by Christy T. Mann and Terri L. Young, Charlotte, for plaintiff-appellee.
James, McElroy & Diehl, P.A., by William K. Diehl, Jr., Charlotte, for defendant-appellant.
PARKER, Judge.
Plaintiff is a resident of North Carolina and the former wife of defendant, who currently resides in New Mexico. Plaintiff instituted this action on 5 December 1989 in Mecklenburg County District Court to obtain a judicial order for the support of the two minor children of the parties' marriage. The Parisher family lived in North Carolina from 1967 until the parties' divorce in this State in 1982.
Defendant left North Carolina in 1983. He was served with the complaint and summons in this action at a temporary business address in Salt Lake City, Utah. In response to plaintiff's complaint, defendant moved to dismiss pursuant to Rules 12(b)(1), (2), (4), (5) and (6) of the North Carolina Rules of Civil Procedure for lack of subject matter and personal jurisdiction, insufficiency of process and service of process and failure to state a claim upon which relief can be granted. The court denied defendant's motion to dismiss. Defendant also moved for a protective order under Rule 26(c) against plaintiff's request for production of financial documents; the trial court denied defendant's motion and granted plaintiff's motion to compel defendant to produce the requested documents. Defendant appeals from the trial court's adverse rulings. On 4 September 1991 defendant also filed a motion to amend the record on appeal, which this Court denied.
Defendant first contends the trial court erred in finding personal jurisdiction over defendant, a New Mexico resident. We disagree. Under a non-judicial separation agreement dated 5 June 1981, defendant obligated himself to pay child support. On 2 February 1983 the parties modified the support portion of their agreement by increasing the monthly payment to $300.00 per child. Thus, although plaintiff's complaint prayed for "an increase in child support based upon a substantial change in circumstances," plaintiff's action was in fact brought pursuant to N.C.G.S. § 50-13.4(a), which provides that "[a]ny parent... having custody of a minor child ... may institute an action for the support of such child." Defendant concedes that plaintiff is asking "the Court to enter an original award of child support." A court must have personal jurisdiction over the *727 defendant in an action for child support. Johnson v. Johnson, 14 N.C.App. 378, 188 S.E.2d 711 (1972); N.C.G.S. § 50-13.5(c)(1).
In support of his argument that the trial court lacked in personam jurisdiction, defendant contends that (i) no statutory basis for long-arm jurisdiction exists in this case under N.C.G.S. § 1-75.4 and (ii) in any event, the court's exercise of personal jurisdiction offends the constitutional requirement of minimum contacts with this State. Defendant correctly states the two-step analysis "to determine whether personal jurisdiction may be exercised over a foreign defendant." Tompkins v. Tompkins, 98 N.C.App. 299, 301, 390 S.E.2d 766, 767 (1990). Contrary to defendant's arguments, however, the trial court properly found that it had personal jurisdiction in this case.
The applicable statutory ground for personal jurisdiction is subsection 12 of our long-arm statute:
A court of this State having jurisdiction of the subject matter has jurisdiction over a person ... under any of the following circumstances:
....
(12) Marital Relationship.In any action under Chapter 50 that arises out of the marital relationship within this State, notwithstanding subsequent departure from the State, if the other party to the marital relationship continues to reside in this State.
N.C.G.S. § 1-75.4(12) (1983). We hold that plaintiff's action meets the dual requirements of subsection 12.
First, plaintiff's action is brought "under Chapter 50." As already mentioned, plaintiff seeks an initial judicial determination of child support, N.C.G.S. § 50-13.4(a), and not a court-ordered modification of the parties' amended separation agreement. The existence of a valid separation agreement relating to child support or custody "does not prevent one of the parties" "from instituting an action for a judicial determination of those same matters." Winborne v. Winborne, 41 N.C.App. 756, 760, 255 S.E.2d 640, 643, disc. rev. denied, 298 N.C. 305, 259 S.E.2d 918 (1979). Further, N.C.G.S. § 50-13.4 is available to this plaintiff, as defendant's prior action for absolute divorce "was filed on or after 1 October 1981." Cf. Schofield v. Schofield, 78 N.C.App. 657, 659, 338 S.E.2d 132, 134 (1986).
Second, plaintiff's action "arises out of the marital relationship within this State." Plaintiff states, and the trial court found, that the parties' marriage took place in North Carolina in 1967. Defendant did not assign error to that finding. Nor did defendant contest the finding that the family resided in North Carolina from 1967 up through the date of absolute divorce, 19 July 1982. Both children were born during the 1970s and presently reside in Mecklenburg County with their mother. For the period 1988-89, the mother and the parties' children lived in Florida. On the ground that plaintiff moved for a time to Florida, defendant contends that the marital relationship within this State "is not the source of this action." We do not agree with defendant's interpretation of the legal significance of plaintiff's temporary move to Florida. The record shows that the family spent at least fifteen years domiciled in North Carolina; and, since the divorce in 1982, plaintiff and her children have also resided almost continuously in this State. On these facts the trial court properly concluded that the statutory requirements for personal jurisdiction over defendant were satisfied.
In addition to the statutory basis for the assertion of in personam jurisdiction, the trial court's exercise of jurisdiction must also satisfy constitutional due process requirements, Miller v. Kite, 313 N.C. 474, 329 S.E.2d 663 (1985), in order that the maintenance of the action not offend "traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Defendant argues that the trial court was incorrect in its conclusion of law that "defendant has sufficient minimum purposeful contacts with the State of North Carolina to establish in personam jurisdiction." This argument is also without merit, given *728 the evidence in the record of defendant's extensive contacts with this State.
In assessing the particular facts of each case, courts consider factors such as:
(1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience.
Fraser v. Littlejohn, 96 N.C.App. 377, 383, 386 S.E.2d 230, 234 (1989) (citing Marion v. Long, 72 N.C.App. 585, 325 S.E.2d 300, disc. rev. denied and appeal dismissed, 313 N.C. 604, 330 S.E.2d 612 (1985)). In appropriate cases the court will look for "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the forum state's laws." Buck v. Heavner, 93 N.C.App. 142, 145, 377 S.E.2d 75, 77-78 (1989) (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958)).
In this case we need not go beyond an examination of the extent and quality of defendant's contacts with North Carolina and the significant connection between those contacts and plaintiff's present action. Defendant having failed to assign error to the finding that the parties and their two children resided in North Carolina from 1967 through 1982, a period co-extensive with defendant's marriage to plaintiff, defendant is bound by this finding on appeal. N.C.R.App.P. 10(a); Williams v. Williams, 97 N.C.App. 118, 387 S.E.2d 217 (1990).
Thus, "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court [in North Carolina]." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). This case is quite unlike the cases in which a plaintiff's unilateral acts in this State are the sole basis for the court's assertion of personal jurisdiction over a non-resident defendant. The factual differences between this case and Miller v. Kite, 313 N.C. 474, 329 S.E.2d 663 (1985), are striking. In Miller our Supreme Court held that a State court could not constitutionally exercise personal jurisdiction over defendant father in a 1982 child support action where: the parties married in Illinois; their child was born in Illinois; mother and child moved to North Carolina some time after a 1972 divorce; defendant had never lived in North Carolina and never purchased property in the State; and defendant merely mailed support payments to this State and visited his child in North Carolina approximately six times during a nine-year period.
Given our conclusion that the trial court had personal jurisdiction over defendant, we examine only briefly defendant's specific assignments of error to the trial court's factual findings that (i) two children were born of the marriage in North Carolina; (ii) the parties entered into separation agreements in North Carolina; and (iii) "defendant regularly visits the State of North Carolina to see his family as well as visit with the minor children." Defendant argues that there is no evidence in the record to support these findings. We disagree.
Defendant's verified divorce complaint, an exhibit in the record on appeal, gives the names and birth dates of the two children born of the marriage with plaintiff and references "a Separation Agreement dated June 5, 1981." An affidavit filed by defendant in Mecklenburg County District Court on 9 April 1990 repeats the names and birth dates of the two children, 1974 and 1977 respectively, and avers defendant's consistent and faithful compliance with monthly support payments for the children as "set forth in our agreement of February 2, 1983." Hence defendant's own evidence is consistent with the more detailed references to the separation agreements in plaintiff's complaint in this action. Moreover, considering (i) the record evidence that the parties resided in North Carolina at the time of their divorce, (ii) the lack of any evidence in the record that the parties executed their separation agreement and its amendment outside North Carolina and (iii) the absence of any reason they would have done so, we can reasonably infer that the parties' separation agreement as *729 amended is a North Carolina contract governed by North Carolina law.
The actual birthplaces of the children and the precise frequency of defendant's visits to North Carolina are inconsequential factors, in light of the undisputed evidence of defendant's substantial, long-term contacts with North Carolina. We also note that plaintiff showed defendant purchased property in Mecklenburg County in 1983, although that fact is not essential to our holding. Under all these facts, the trial court properly concluded that defendant had sufficient purposeful contacts with North Carolina to satisfy due process requirements.
In his second assignment of error, defendant presents his theory that the divorce action he filed in Mecklenburg County in 1982 is still pending and that plaintiff, therefore, cannot bring a second action in the same cause. Defendant consequently assigns error to the trial court's conclusions that "[t]here is no child custody or child support action pending in any other cause" and that the issue of support "was not raised in the 1982 divorce action." Defendant argues that his prior divorce action placed the question of child support at issue with the results that (i) the original divorce court retains jurisdiction over that question and (ii) the present independent action by his wife should, therefore, have been dismissed under a theory of abatement. We disagree.
"The ordinary test for determining whether or not the parties and causes are the same for the purpose of abatement by reason of the pendency of a prior action is this: Do the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded?"
Clark v. Craven Regional Med. Authority, 326 N.C. 15, 21, 387 S.E.2d 168, 172 (1990) (citations omitted). As discussed hereafter, defendant's assertion that his 1982 divorce complaint placed the question of child support at issue is in conflict with existing case law construing the relevant statute, N.C.G.S. § 50-13.5(f). Defendant has not shown the identity of subject matter, issues involved and relief requested under the standard tests applied to a plea in abatement.
N.C.G.S. § 50-13.5(f), enacted in 1967, is the venue provision for a child support action. It includes the following language:
If an action for ... divorce ... has been previously instituted in this State, until there has been a final judgment in such case, any action or proceeding for custody and support of the minor children of the marriage shall be joined with such action or be by motion in the cause in such action.
N.C.G.S. § 50-13.5(f) (1987).
The seminal case interpreting this statutory provision is In re Holt, 1 N.C.App. 108, 160 S.E.2d 90 (1968). Holt held that N.C.G.S. § 50-13.5(f) modified the prior rule that a court trying a divorce action ordinarily obtained and retained "exclusive jurisdiction of custody and support of children... where no custody or support questions [were] raised prior to, or determined in, the final judgment in the divorce action." Id. at 110-111, 160 S.E.2d at 92 (italics omitted); see also Johnson v. Johnson, 14 N.C.App. 378, 188 S.E.2d 711 (1972).
In Holt the husband's complaint for divorce contained no prayer for custody or child support. Similarly, defendant's 1982 action for divorce in this case contained only the prayer "that the marriage of the parties be dissolved and that he be granted an absolute divorce." In Holt, as in this case, the wife filed no answer or crossclaim, so that no responsive pleading raised any additional issues. Finally, the final judgment of divorce in Holt made no mention of custody or child support, exactly like the present defendant's divorce judgment. On these facts the Holt Court held that the support and custody issues had "not been brought to issue or determined," thus permitting the former wife to file an independent proceeding for child support.
Despite the clarity of the holding in Holt, defendant argues that the following paragraph in his complaint for divorce brought child support to issue:

*730 There were two children born of the marriage between Plaintiff and Defendant, namely, Brandon Chas Parisher, born February 2, 1974 and Courtney Anne Parisher, born February 13, 1977. The children are in the custody of Defendant and Plaintiff is providing for their support under the provisions of a Separation Agreement dated June 5, 1981.
Allegations of the names and ages of any children of a party seeking divorce in North Carolina are required by N.C.G.S. 50-8, in order that the court may protect the interests of such children if the parties have failed to do so. Jones v. Jones, 20 N.C.App. 607, 202 S.E.2d 279, cert. denied, 285 N.C. 234, 204 S.E.2d 23 (1974). Followed to its logical conclusion, defendant's argumentbased as it is on a simple mandatory averment concerning children would mean that every divorce complaint would place the question of child support at issue where the parties had minor children.
Such a conclusion is inconsistent with our case law. In Wilson v. Wilson, 11 N.C.App. 397, 181 S.E.2d 190 (1971), this Court held that child support had not been brought to issue or determined under the following facts. The divorce complaint and answer raised "certain issues," id. at 399, 181 S.E.2d at 191; but the divorce judgment expressly stated that " `the parties have disposed of all matters at issue by a separation agreement and the sole matter that remains to be determined in this action is [their] divorce,' " id. at 398, 181 S.E.2d at 191. In the present case, the judgment of divorce contained findings only of then-plaintiff's residency in North Carolina, his marriage to Donna Parisher (now Powers) and a continuous separation of the parties for more than one year. The sole relief in the decree was dissolution of the parties' marriage, just as in Wilson and Holt; and, as in both those cases, that was the only relief sought by defendant in his prior divorce action.
Further, in defendant's divorce decree, there is not even any mention, let alone an incorporation of, the parties' separation agreement, unlike the decree in Wilson, which recited:
"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the bonds of matrimony ... are hereby dissolved ... [and] that the plaintiff shall have the custody of the minor children in accordance with the amended separation agreement heretofore mentioned...."
Id. Despite this express allusion to the parties' separation agreement, the Wilson Court held that the prior divorce action did not place the question of child support at issue. The reasoning in Wilson applies in the present case.
The judgment is completely silent as to support of the children and does not even refer to any such provision in the separation agreement.... The judgment refers to a separation agreement and an amended separation agreement, but contains nothing by which any separation agreement could be identified as to date or content. Certainly, the separation agreements referred to are not incorporated in the divorce judgment.
Id. at 399, 181 S.E.2d at 191. Based on these observations in Wilson we also hold that defendant's mere mentioning of "a Separation Agreement dated June 5, 1981" in his divorce complaint was insufficient to raise the issue of child support. As defendant's divorce complaint did not ask the divorce court to review the question of child support and as the divorce judgment did not even allude to the parties' separation agreement, we overrule defendant's second assignment of error.
Finally, defendant assigns error to the trial court's refusal to issue a protective order against plaintiff's extensive requests for documents concerning defendant's financial status. The general rule is "that orders regarding matters of discovery are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." Hudson v. Hudson, 34 N.C.App. 144, 145, 237 S.E.2d 479, 480, disc. rev. denied, 293 N.C. 589, 239 S.E.2d 264 (1977). We hold that it was an abuse of discretion not to have granted defendant some relief under Rule 26(c) of the North Carolina Rules of *731 Civil Procedure in this case, on the ground that plaintiff's requests for discovery under Rule 34 far exceed the scope of financial documents relevant to plaintiff's action and are, therefore, unduly burdensome. Absent relevance, plaintiff cannot possibly establish the necessity for many of the documents sought in this case. See Williams v. State Farm Mut. Auto. Ins. Co., 67 N.C.App. 271, 273, 312 S.E.2d 905, 907 (1984) (litigants not permitted to engage "in mere fishing expeditions").
Plaintiff requests copies of all these materials for each of the past five years and the current year to date, where applicable: defendant's federal and State income tax returns; financial statements; "[a]n itemization and all written proof" of income; an itemization of all money received "from any and all sources," other than income; documents showing ownership of any realty or personalty; "[a]ll written documents illustrative of all tangible [sic] assets" including "stocks, bonds, mutual funds, account statements from brokerage firms, certificates of deposit, and the like"; "[a]ll your checking account records," including "monthly account statements, the checkstub book and all cancelled checks"; "[a]ll savings account records," including "all deposit slips, passbooks, withdrawal slips, and any other documents related to maintenance of the savings account"; and evidence of debt. Plaintiff's position that all such documents are "necessary" is untenable.
Plaintiff's position is untenable because the relevant inquiries in an action under N.C.G.S. § 50-13.4(a) are "the reasonable needs of the child" and the parties' present, relative financial abilities to contribute to those needs. N.C.G.S. § 50-13.4(c).
When a motion is made to modify the child support provisions of a separation agreement which has not previously been incorporated into an order or judgment of the court, the court is called upon, for the first time, to exercise its authority to see that the reasonable needs of the child are provided for commensurate with the abilities of those responsible for the child's support.... [T]he moving party's only burden is to show the amount of support necessary to meet the reasonable needs of the child at the time of the hearing.
Boyd v. Boyd, 81 N.C.App. 71, 76, 343 S.E.2d 581, 584-85 (1986) (hence evidence of change of circumstances "is not an absolute requirement to justify an increase" in support).
Ordinarily the ability of the supporting spouse to pay child support is determined by the amount that parent is earning at the time of the court's award. Plott v. Plott, 313 N.C. 63, 326 S.E.2d 863 (1985); 3 R. Lee, North Carolina Family Law § 229, at 121 (4th ed. 1981). While the trial court's thinking in approving plaintiff's discovery requests is not apparent from the record, the court found that plaintiff's request for production was "reasonable ... in scope." The scope of plaintiff's discovery request is, however, not reasonable, when viewed from the proper perspective of determining defendant's current ability to pay the support reasonably needed by the children.
For the foregoing reasons, we affirm the trial court's assertion of personal jurisdiction over defendant and its determination that the theory of abatement was not applicable to these facts. We reverse, however, the trial court's orders granting plaintiff's discovery motion to compel document production and denying defendant's motion for a protective order under Rule 26(c) and remand for reconsideration, consistent with this Court's opinion, of defendant's motion to limit the scope of discovery.
Affirmed in part; reversed and remanded in part.
JOHNSON and EAGLES JJ., concur.